UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X

GREGORY P. MORSON,

                          Plaintiff,

            -against-

**MEMORANDUM & ORDER**
**09 CV 2994 (DRH)(ARL)**

KREINDLER & KREINDLER, LLP,

                        Defendant.
----------------------------------------------------X

**APPEARANCES:**

**Chardon Law Offices**
Attorneys for Plaintiff
One State Street, 12th Floor
Boston, Massachusetts 01209
By:    Jonathon D. Plaut, Esq.

**Morrison Mahoney LLP**
Attorneys for Defendant
17 State Street, Suite 1110
New York, New York 10004
By:    Arthur J. Liederman, Esq.
          Kevin A. Hickman, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff brings this diversity action[1] sounding in legal malpractice, breach of contract, breach of fiduciary duty, negligent and intentional infliction of emotional distress, and unfair business practices against Kreindler & Kreindler LLP. Now before the Court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to all claims. For the reasons set forth below, the motion is granted.

---

[1] Plaintiff is a resident Massachusetts. Defendant is a limited liability partnership registered in New York with offices in multiple states, and is not a citizen of Massachusetts for purposes of diversity. *See Morson v. Kreindler & Kreindler, LLP*, 616 F. Supp. 2d 171 (D. Mass. 2009)(denying plaintiff's motion to remand this case to state court prior to its transfer to this District).

## BACKGROUND

I. RELEVANT FACTS

Plaintiff's claims arise out of events that occurred during defendant's legal representation of plaintiff (or "Morson") and his sister, Vanessa Morson, (collectively, the "Morsons"), who served as the co-administrators of their mother's estate. The subject representation involved a 1996 case brought in this District alleging wrongful death against the Libyan government for its involvement in the 1988 bombing of Pan American Airlines flight 103 over Lockerbie, Scotland (the "Lockerbie action").[2] *See Morson v. The Socialist People's Libyan Arab Jamahirya,* No. 96 CV 2077 (TCP) (E.D.N.Y). In October 2002, a conditional settlement agreement was reached between the parties in that action that relied on the occurrence of three "triggering events," the details of which are not relevant for present purposes. (Statement of Undisputed Material Facts, pursuant to Local Civil Rule 56.1 ("56.1 Stmt.") ¶¶ 20-21.)

Prior to this conditional settlement, on December 26, 2001, judgment was entered against Morson for approximately $1.7 million in a separate lawsuit in the Southern District of New York. (56.1 Stmt. ¶¶ 24, 27); *See Palazzetti Import/Export, Inc. v. Morson,* No. 98 CV 722 (FM) (S.D.N.Y.)(the "Palazzetti action"). The judgment was later affirmed on appeal at some point in 2002. (56.1 Stmt. ¶ 28.) Kreindler & Kreindler LLP did not represent Morson in that action.

In late 2002, Morson and one Sergio Palazzetti began direct settlement negotiations without the aid of counsel regarding payment of the Palazzetti judgment. (56.1 Stmt. ¶ 34.) During these talks, Palazzetti indicated that he "would be amenable to settle for $500,000 in cash," as a lump sum, (Deposition of Sergio Palazzetti ("Palazzetti Dep.") at 58-69, D's Ex. I), though no final agreement was entered into by the two men at that time. (*See* Deposition of

---

[2] Kreinder & Kreindler LLP represented many of the victims' families in the Lockerbie action. (Rule 56.1 Statement ¶ 11.)

Gregory Morson ("Morson Dep.") at 46-47, D's Ex. G; *see also* Palazzetti Dep. at 51 ("The only thing I remember is that when we actually sort of agreed on the 500,000 number.").)

Around that same time, Palazzetti discussed with his attorney, Debra J. Guzov, what Palazzetti had learned primarily through the news media, *viz.*, that Morson was involved in the Lockerbie action, that settlement talks were underway between the parties, and that Morson was potentially entitled to a large payout in that case. (56.1 Stmt. ¶¶ 22, 30; Palazzetti Dep. at 34-36.) Guzov then served Kreindler & Kreindler LLP with a "Restraining Notice," pursuant to N.Y. CPLR 5222, requesting that the firm complete an attached questionnaire concerning Morson's current and potential assets. On January 15, 2003, James P. Kreindler ("Kreindler") completed the questionnaire and returned it to Guzov. (Pl's Ex. 4.) In his response, Kreindler provided the following statement relevant to this suit: "We filed suit arising from the death of Eva I. Morson against Libya in 1996. We have a written settlement agreement which goes into effect when Libya complies with the United Nations requirements. Settlement not less than $5 million nor more than $10 million." (Pl.'s Ex. 5.)

Meanwhile, Palazzetti had informed his "trial counsel," Michael Regan (who had a lien on any judgment in the Palazzetti action), that he had discussed settling the Palazzetti action with Morson for $500,000. According to Palazzetti's testimony, Regan informed him that he learned from Guzov that the Lockerbie action "would be resolved positively for the Morsons very soon," and that he should not settle for less than the judgment. (Palazzetti Dep. at 58) Shortly thereafter, Palazzetti communicated to Morson that he would no longer settle the judgment for $500,000. Palazzetti testified that he changed his position because he "was told that [he] could get the whole amount in a fairly short time." (Palazzetti Dep. at 9, 64.)

3

The Morson's eventually recovered $10 million from the Lockerbie action (56.1 Stmt. ¶ 32; D's Ex. L.), and Palazzetti collected the entire amount of his judgment from Morson, (Pl.'s Ex. 7).

On January 22, 2003, Morson received a copy of the completed questionnaire mailed to him by Kreindler. (Morson Dep. at 53-55.) Morson immediately called Kreindler to discuss the matter, (*id.* 54-56) and Kreindler informed him that he was "obligated to answer the questionnaire and that that is what he had done," (*id.* at 57). At that time, Morson put two and two together and realized that Kreindler's response "completely derailed [his] negotiations with Mr. Palazzetti." (Morson Dep. at 58.)

II. PROCEDURAL HISTORY

Plaintiff originally filed this case in the Suffolk County Superior Court of Massachusetts on January 15, 2009, and defendant timely removed it to the United States District Court for the District of Massachusetts. On July 10, 2009, the Honorable Richard G. Stearns, United States District Judge, transferred the case to this District. (*See* Docket No. 21.)

DISCUSSION

I. STANDARD OF REVIEW

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino,*

4

*Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or more than "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must

show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)).[3] "Rule 56(e)'s requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of a summary judgment motion." *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue , the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Id. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-

---

[3] The cited portion of Fed. R. Civ. P. 56(e) was renumbered as Rule 56(c)(4) as part of the amendments to Rule 56 effective December 1, 2010.

moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

II. STATUTE OF LIMITATIONS

    a. *New York's Borrowing Statute and Plaintiff's State of Residency*

Ordinarily, in a diversity case, "a federal court would apply the law of the forum in which the court is located." *Johnson & Johnson Fin. Corp. v. BSR Realty L.P.*, 1996 U.S. Dist. LEXIS 22791 (E.D.N.Y. Sept. 19, 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In applying the law of the forum, the Court looks to that state's choice-of-law rules and statutes of limitations. *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)(citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945)). "Choice of law provisions typically apply to only substantive issues and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right." *Portfolio Recovery Assoc., LLC v. King*, 14 N.Y.3d 410, 416, 927 N.E.2d 1059 (2010). Further, "[s]ince under common-law rules matters of procedure are governed by the law of the forum, it has generally been held that the Statute of Limitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action." *Martin v. Julius Dierck Equip. Co.*, 43 N.Y.2d 583, 588, 374 N.E.2d 97 (1978).

The Court therefore looks to New York's borrowing statute, N.Y. CPLR § 202, to evaluate the timeliness of plaintiff's claim. *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 715 N.E.2d 482 (1999) ("Because earlier iterations of the borrowing statute predate the [current substantive choice of law rules] . . . these choice-of-law analyses are inapplicable to the question of statutory construction presented by CPLR 202."). Under that statute, where a plaintiff, not a resident of New York, brings a claim for a cause of action that accrued outside

7

New York, the court applies the shorter limitations period of either the state of accrual or New York. *See* N.Y. CPLR § 202. "New York courts interpreting the borrowing statute hold that the cause of action accrues in the place of the injury, and 'where an injury is purely economic,[4] the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss.'" *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 374 (S.D.N.Y. 2004)(citing *Global Fin.*, 93 N.Y.2d at 529); *Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989).

At the time Morson filed this lawsuit, he was a resident of Massachusetts. (Pl.'s Ex. 6, Interrogatory #4.) However, during the years 1999-2003, he resided in Chicago, Illinois, and on an unspecified date in 2003, moved to Massachusetts. (*Id.*; Morson Dep. at 14.) Defendant's alleged malpractice occurred on or about January 15, 2003. On January 22, 2003, Morson received a copy of the completed questionnaire, and at some point around that date, Palazzetti informed Morson that he would no longer settle the judgment for less than the full amount due. As Morson testified at his deposition, on the day he received a copy of the questionnaire, he surmised that that defendant's response "completely derailed [his] negotiations with Mr. Palazzetti." (Morson Dep. at 59.)

Although Morson most likely moved to Massachusetts in 2003 after these events occurred in January, the evidence before the Court does not clearly establish that fact. Therefore,

---

[4] Two of plaintiff's claims, Count V: negligent infliction of emotional distress ("NEID"), and Count VI: intentional infliction of emotional distress ("IIED"), allege injuries that are not purely economic in nature. However, New York does not allow claims for negligent infliction of emotional distress under a legal malpractice claim, unless the defendant's conduct "unreasonably threatened plaintiff's physical safety in some way." *Schonberger v. Serchuk*, 742 F. Supp. 108, 120 (S.D.N.Y. 1990)(citing *Green v. Leibowitz*, 118 A.D.2d 756, 757-78 (2d Dep't 1986)). Such facts are not present in this case and the NEID claim is therefore dismissed. Further, regarding the IIED claim, there is no evidence in the record that would allow a juror to conclude that defendant's "conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699 (1993)(quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303, 448 N.E.2d 86 (1983)). Plaintiff's IIED claim is therefore likewise dismissed.

it cannot be determined on the record whether the alleged conduct transpired (and by extension whether plaintiff's claim accrued) while Morson was a resident of Illinois, or while he was a resident of Massachusetts. Nevertheless, the Court need not resolve this fact because, as discussed in more detail below, regardless of plaintiff's residency at the time of accrual, his malpractice claims are time-barred.

    b. *The Applicable Statutes of Limitations*

        i. Plaintiff's Common Law Claims (Counts I-IV)

As an initial matter, plaintiff's first four common law claims ("malpractice" claims)[5] are based on both contractual and tort causes of action. In New York, breach of contract claims must be filed within six years, while negligence claims must be filed within three. N.Y. CPLR § 201, *et seq*. However, plaintiff's claims "are based on the same alleged conduct amounting to legal malpractice; there is no allegation of any breach of contract separate and distinct from the alleged legal malpractice. Similarly, there is no allegation of any breach of fiduciary duty separate and distinct from the alleged legal malpractice. Under these circumstances all of plaintiff's claims against [defendant] are barred by the three-year statute of limitations, which governs actions to recover damages for professional malpractice . . . regardless of whether the underlying theory is based in contract or tort." *Dozier v. Wilkie Farr & Gallagher LLP*, No. 09 Civ. 9865, 2011 U.S. Dist LEXIS 50687, *4 (E.D.N.Y. May 9, 2011)(quoting *6645 Owners Corp. v. GMO Realty Corp.*, 306 A.D.2d 97, 98 (1st Dep't 2003)); *see* N.Y. CPLR § 214(6)(Three-year statute of limitations for "an action to recover damages for [legal] malpractice . . . regardless of whether the underlying theory is based in contract or tort.").

---

[5] For purposes of clarity, the Court shall hereinafter refer to the first four counts of the amended complaint as plaintiff's "malpractice" claims, and to the seventh count as plaintiff's "consumer" claim. As noted in footnote four *supra*, counts V and VI are dismissed.

The same principle applies to the limitations period for legal malpractice in both Illinois and Massachusetts. *See Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 176 (Ill. App. Ct. 1st Dist. 2011)("The statute of limitations for a legal malpractice action is set forth in section 13-214.3 of the Code, which provides that an action against an attorney for damages based on tort, contract or otherwise arising out of an act or omission in the performance of professional services 'must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.'")(quoting 735 Ill. Compiled Statutes 5/13-214.3(b)); *see also Murphy v. Smith*, 411 Mass. 133, 135-136 (Mass. 1991)("Actions of contract or tort for malpractice, error or mistake against attorneys . . . shall be commenced only within three years next after the cause of action accrues.")(quoting Mass. G. L. c. 260, § 4).

Therefore, for purposes of applying New York's borrowing statute to plaintiff's malpractice claims, New York and Massachusetts provide for a three-year limitations period, and Illinois for a two-year period, regardless of the fact that plaintiff brings his malpractice claim under more than one theory.

As to the date of accrual of the malpractice claims, New York looks to the date in which the malpractice was committed, while Illinois and Massachusetts consider the date in which the plaintiff discovers his or her injury arising out of such misconduct. *McCoy v. Feinman*, 99 N.Y.2d 295, 301, 785 N.E.2d 714 (2002) (A claim accrues "when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court." (citing *Ackerman v. Price Waterhouse*, 84 N.Y.2d 535, 541, 644 N.E.2d 1009 (1994))); *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166, 750 N.E.2d 67 (2001) (citing *Glamm v. Allen*, 57 N.Y.2d 87, 95, 439 N.E.2d 390 (1982)("What is important is when the malpractice was committed, not when the client

discovered it.")); *Hester v. Diaz*, 346 Ill. App. 3d 550, 553 (Ill. App. Ct. 5th Dist. 2004)("In Illinois, the statute of limitations for legal malpractice is two years 'from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.'" (citing 735 Ill. Compiled Statutes 5/13-214.3(b))); *Lyons v. Nutt,* 436 Mass. 244, 247, 763 N.E.2d 1065 (Mass. 2002)("The statute of limitations applicable to a legal malpractice claim begins to run when a client 'knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct.'" (citing *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799 (1996))). Here, the purported malpractice was committed by defendant, and the resulting injury was discovered by plaintiff in or around January 15-22, 2003. See discussion *supra.* Plaintiff's malpractice claims therefore accrued under the law of all three states during that period.

This conclusion is not altered by plaintiff's argument that he "did not know that he had a claim against Kreindler until May 2007 when he consulted with an attorney who advised him that he had a claim." (Sur-Reply[6] at 3; *see* Pl.'s Memo at 23.) The very cases cited by plaintiff to advance this argument explain why plaintiff's assertion is legally incorrect. Accrual in this context, at least in Illinois and Massachusetts,[7] is concerned not with the date in which plaintiff discovered he had a legal claim, but rather with the date in which he discovered his "injury." *See* cases *supra.*

---

[6] On January 21, 2001, plaintiff requested leave to file a sur-reply. (Docket No. 57.) The Court hereby grants such leave and considers the content of the sur-reply filed in conjunction with that request in deciding the present motion.
[7] As discussed above, New York does not apply the discovery rule to the accrual of legal malpractice claims. *McCoy*, 99 N.Y.2d at 301.

11

ii. Plaintiff's Consumer Claim (Count VII)

Plaintiff's final count brings claims under Mass. G.L. c. 93A, which is entitled the "Regulation of Business Practices for Consumers Protection." A four-year statute of limitations applies to such claims. *See* G. L. c. 260, § 5A. Further, "[u]nder the 'discovery rule,' this limitations period is subject to tolling until the plaintiff knew or should have known of the alleged injury. *See Albrecht v. Clifford*, 436 Mass. 706, 714-15, 767 N.E.2d 42 (2002).

The analogous consumer law in New York is New York General Business Law § 349("section 349"), under Article 22-A, which is entitled "Consumer Protection from Deceptive Acts and Practices." Section 349 has a three-year statute of limitations, s*ee* C.P.L.R. § 214(2),[8] and "accrues when plaintiff becomes injured by the prohibited deceptive act or practice." *Parejas v. GE Capital Servs.*, No. 10-CV-3348, 2011 U.S. Dist. LEXIS 71996 (E.D.N.Y. July 5, 2011).

In Illinois, the appropriate statute is 815 Ill. Cons. Stat. 505, known as the "Consumer Fraud and Deceptive Business Practices Act." Claims under that statute must be brought within three years of accrual. 815 Ill. Cons. Stat. 505/10a(e); *see Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 213, 848 N.E.2d 1 (Ill. 2005)(noting that the discovery rule applies to the accrual of claims under the Act).

   c. *Under the Present Facts, the Continuous Representation Doctrine Does Not Apply in Illinois or Massachusetts to Plaintiff's Malpractice Claims*

It is undisputed that plaintiff did not bring his malpractice claims within the limitations periods set forth above. The complaint was filed in Massachusetts state court on January 15, 2009, approximately six years after the claim accrued. However, in determining the appropriate

---

[8] *See also Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 209-10, 750 N.E.2d 1078 (2001)(holding that the six-year limitations period for common law fraud claims does not apply section 349 claims given that it is a statutory cause of action).

limitations period under New York's borrowing statute, the Court must consider not just the accrual state's limitations period, but also that state's tolling provisions. *Portfolio*, 14 N.Y.3d 410, 416 ("That does not end the inquiry, however, because in determining whether [plaintiff's] action would be barred in Delaware, this Court must 'borrow' Delaware's tolling statute to determine whether under Delaware law [plaintiff] would have had the benefit of additional time to bring the action."); *see Martin*, 43 N.Y.2d at 592(analyzing, for purposes of applying New York's borrowing statute, Virginia's applicable statute of limitations and tolling provision).

The parties devote a significant portion of their legal arguments to discussing the tolling of plaintiff's claims under New York's continuous representation doctrine.[9] However, under the rubric of the borrowing statute, the application of the doctrine under New York law is rendered academic where the plaintiff cannot enjoy a similar tolling provision in the accrual state. In other words, assuming here that plaintiff is entitled to tolling in New York, if the same tolling does not apply in the accrual state, the limitations period in that state is necessarily shorter than it is in New York, and the Court must look to the accrual state's limitations period.

Illinois does not recognize the doctrine of continuous representation. *Serafin v. Seith*, 284 Ill. App. 3d 577, 585 (Ill. App. Ct. 1st Dist. 1996); *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544 (Ill. App. Ct. 4th Dist. 1995)(noting that the state's highest court has also not recognized a continuous treatment doctrine in medical malpractice cases). Massachusetts does recognize the doctrine, but it is substantially limited to cases where the plaintiff has no actual knowledge of harm caused be the attorney's conduct. *Lyons*, 436 Mass. at 250. The facts

---

[9] Under New York's continuous representation doctrine, the statute of limitations for legal malpractice claims is typically tolled until the "ongoing representation" is complete. *Glamm v. Allen*, 57 N.Y.2d 87, 94, 439 N.E.2d 390 (1982), *but see Shumsky*, 96 N.Y.2d at 167 ("[A]pplication of the [doctrine] is [ ] generally limited to the course of representation concerning a specific legal matter."); *see also id.* at 168 ("[T]he doctrine is not applicable to a client's . . . continuing general relationship with a lawyer . . . involving only routine contact for miscellaneous legal representation . . . unrelated to the matter upon which the allegations of malpractice are predicated.")

13

here do not demonstrate that such an exception is present. Plaintiff knew of the disclosure contained in the questionnaire sent to Guzov in January 2003, and learned around that same period that Palazzetti was allegedly withdrawing his settlement offer as a result. Plaintiff therefore had knowledge of the fact of his injury at that time, and any tolling under the continuous representation doctrine as it applies in Massachusetts would have then ended.

Accordingly, plaintiff may not look to either Illinois or Massachusetts law to toll the statute of limitations for his malpractice claims, and therefore, as discussed above, the Court need not consider tolling under New York law.

### d. *Plaintiff's Claims Are Time-Barred Under New York's Borrowing Statute*

As discussed above, plaintiff resided in either Illinois or Massachusetts at the time his claim accrued. If plaintiff was a resident of Illinois at that time, New York's borrowing statute requires the Court to look to the shorter period of time when comparing the Illinois and New York statutes of limitation. Alternatively, if plaintiff was a resident of Massachusetts when the claim accrued, the same comparison would apply to the New York and Massachusetts statutes of limitation.

Tolling does not apply here. Therefore, depending on plaintiff's residency, he would have had to file his malpractice claims under Illinois law within two years of discovering his injury in early 2003, or under Massachusetts law, within three years of such discovery. Likewise, plaintiff would have to have filed his consumer claim within three years of accrual. There is no dispute that plaintiff did not file his case within either of these time periods. His malpractice and consumer claims are therefore time barred.

## CONCLUSION

Accordingly, and for the reasons stated above, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed.  The Clerk of Court is directed to close this case.


SO ORDERED.


Dated: Central Islip, N.Y.
   September 28, 2011

                     /s/
                    Denis R. Hurley
                    United States District Judge